

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Fernando Márquez; Dora E. García; Josefina O. Capone; Howard Ferrer; Ediwn Díaz, Rafael Rodríguez, por sí y en Representación de la Clase con Una Estación Principal Residencial (Clase A); <br><br> Health Care Partners, Inc.; Raúl Delguy Capilla; Santa Paula Oil Corp.; Best Gas; Howard Ferrer; B/JCS Deli Box; Edwin Dí az, Insuramerica Agency; Interservice Group; Interamerican Business Consultant; Instituto Neumológico, por sí y en Representación de la Clase con Una Estación Principal de Negocios (Clase B); <br><br> Interservice Group, Inc.; Interamerican Business Consultant; Instituto Neumológico, por sí y en Representación del a Clase con Una Línea Principal de Negocios (Clase C); <br><br>      Peticionarios <br><br>        v. <br><br> Puerto Rico, Telephone Company <br><br>     Recurrido | Certiorari <br><br><br> 2011 TSPR 183 <br><br><br> 183 DPR ____ |

Número del Caso:  CC            - 2007 - 101

Fecha: 8 de diciembre de 2011

Tribunal de Apelaciones:

              Región Judicial de Bayamón            -        Panel VI

Jueza Ponente:             Hon. Nélida Jiménez Velázquez

Abogados de la Parte Peticionaria:

>                   Lcdo. Harold D. Vicente González
>                   Lcdo. José A. Andreu García
>                   Lcdo. Julio J. Villamil-Wiscovitch
>                   Lcdo. José A. Andreu Fuentes

Abogados de la Parte Recurrida:

>                   Lcdo. José E. González Borgos
>                   Lcda. María L. Montalvo-Vera

Materia: Reclamación Bajo la Ley de Telecomunicaciones de Puerto Rico, Núm. 213 de 12 de septiembre de 1996, 27 L.P.R.A. sec. 265 y la Ley de Acción de Clase por Consumidores de Bienes y Servicios según enmendada, 32 L.P.R.A. sec. 3341

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Fernando Márquez; Dora E. García; Josefina O. Capone; Howard Ferrer; Edwin Díaz, Rafael Rodríguez, por sí y en Representación de la Clase con Una Estación Principal Residencial. (Clase A);<br><br>Health Care Partners, Inc.; Raúl Delguy Capilla; Santa Paula Oil Corp.; Best Gas; Howard Ferrer; B/JCS Deli Box; Edwin Díaz, Insuramerica Agency; Interservice Group; Interamerican Business Consultant; Instituto Neumológico, por sí y en Representación de la Clase con Una Estación Principal de Negocios (Clase B);<br><br>Interservice Group, Inc.; Interamerican Business Consultant; Instituto Neumológico, por sí y en Representación de la Clase con Una Línea Principal de Negocios (Clase C);<br><br>Peticionarios<br><br>v.<br><br>Puerto Rico Telephone Company<br><br>Recurrido | * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | CC-2007-101<br><br><br><br><br><br><br><br><br>Certiorari |

****************************************
Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 8 de diciembre de 2011.

> *En última instancia, la pregunta que subyace muchos de los problemas constitucionales es: ¿quién tiene el poder para qué?*[1]
>
> *-Raúl Serrano Geyls*

---

[1] Raúl Serrano Geyls, <u>Derecho Constitucional de Estados Unidos y Puerto Rico</u>, Vol. I, Universidad Interamericana de Puerto Rico, 1997, pág. 571.

Nos corresponde examinar por primera vez el alcance de la Ley Núm. 138 de 4 de noviembre de 2005 y resolver si la Asamblea Legislativa transgredió el principio de separación de poderes al aprobar con aplicación retroactiva dicho estatuto, el cual le concedió jurisdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones para dilucidar todo reclamo sobre los servicios de telecomunicaciones y violaciones a las disposiciones de la Ley de Telecomunicaciones, *infra*. Ello a la luz de la desestimación de un pleito de clase que perseguía impugnar un cargo mensual por el servicio de tele-tecla, el cual estaba pendiente ante el Tribunal de Primera Instancia al momento de aprobarse la legislación que nos ocupa.

I

El 17 de noviembre de 2003, los demandantes y peticionarios de epígrafe presentaron un pleito de clase contra la Puerto Rico Telephone Company, en adelante "P.R.T.C.". En lo pertinente, alegaron que la P.R.T.C. cobró durante siete (7) años un cargo mensual por el servicio de tele-tecla que no estuvo basado en el costo de proveer dicho servicio. Por lo tanto, adujeron que el cobro del referido cargo infringió la Ley de Telecomunicaciones de Puerto Rico, Ley Núm. 213 de 12 de septiembre de 1996, 27 L.P.R.A. sec. 265, *et seq.*, en adelante "Ley de Telecomunicaciones". Finalmente, solicitaron el reembolso de una cantidad no menor de $105,350,000 más costas, intereses y el veinticinco por ciento (25%) de honorarios de abogados. Esto, de conformidad con la Ley Núm. 118 de 25

de junio de 1971, según enmendada por la Ley Núm. 269 de 16 de noviembre de 2002, 32 L.P.R.A. sec. 3343.

El 30 de diciembre de 2003, la P.R.T.C. contestó la demanda. En lo atinente, negó que el cargo tarifario fuera ilegal y levantó como defensa afirmativa que la acción estaba prescrita.

Posteriormente, la P.R.T.C. presentó una moción de sentencia sumaria. En ella adujo que el contrato entre la P.R.T.C. y los consumidores establecía un término de quince (15) días para pagar u objetar los importes. Sin embargo, alegó, los demandantes nunca objetaron o presentaron querella ante la P.R.T.C. con relación a los cargos de tele-tecla que le eran facturados. Por lo tanto, la P.R.T.C. solicitó se desestimara el pleito en virtud de sus defensas de prescripción, caducidad e incuria. Luego de varios trámites procesales, el 3 de mayo de 2005 el Tribunal de Primera Instancia certificó el pleito como uno de clase.[2]

Entretanto, la Asamblea Legislativa enmendó la Ley de Telecomunicaciones mediante la aprobación de la Ley Núm. 138 de 4 de noviembre de 2005, codificada en 27 L.P.R.A. secs. 265(a) y 269j-1. Esta ley concedió jurisdicción primaria y exclusiva a la Junta Reglamentadora de

---

[2]Los demandantes se componen de tres (3) clases. La Clase A está compuesta de consumidores que tienen una línea en sus residencias (*Residence Main Station*). La Clase B está formada por consumidores que tienen solamente una línea en sus negocios sin un cuadro telefónico (Business Main Station). Por último, la Clase C está conformada por consumidores que tienen multi-líneas en sus negocios (Business Main Line).

Telecomunicaciones para ventilar reclamaciones sobre todos los servicios de telecomunicaciones y violaciones a las disposiciones de la Ley de Telecomunicaciones. Igual jurisdicción le dispensó para otorgar compensaciones por daños y perjuicios. Pero además, la Ley Núm. 138, *supra*, estableció un límite a la compensación total que podría concederse en pleitos de clase. Así, impuso como tope a este tipo de reclamación la suma que fuere menor entre $5,000,000 o el medio por ciento (1/2%) de los activos del querellado. Esto último, según los libros del propio querellado. Finalmente, la aludida ley dispuso que surtiría efecto sobre cualquier procedimiento pendiente o que se presentara con posterioridad a su aprobación.

Así las cosas, el 11 de enero de 2006 la P.R.T.C. presentó una moción de desestimación en la cual sostuvo que de conformidad con la Ley Núm. 138, *supra*, el Tribunal de Primera Instancia carecía de jurisdicción para atender el reclamo de la clase. Ello, pues la aludida ley concedió jurisdicción primaria y exclusiva a la Junta de Telecomunicaciones para atender pleitos como el de marras.[3]

Los demandantes se opusieron a la desestimación y arguyeron que la Ley Núm. 138, *supra*, era inconstitucional en cuanto limitaba el derecho de las clases a recibir una compensación total. Asimismo, adujeron que la referida ley violentaba el derecho a la libre asociación; el principio de separación de poderes; el debido proceso de ley; la

---

[3]La moción de sentencia sumaria presentada previamente por la P.R.T.C. aún no había sido atendida.

igual protección de las leyes; menoscababa las obligaciones contractuales; y no podía ser aplicada retroactivamente.

Luego de celebrar una audiencia para escudriñar las posturas de ambas partes y después de evaluar sus respectivos escritos, el 5 de mayo de 2006 el Tribunal de Primera Instancia emitió una sentencia en la cual desestimó la demanda. Ello, debido a que la Ley Núm. 138, *supra*, concedió jurisdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones para dilucidar cualquier pleito en el que se alegaran violaciones a la Ley de Telecomunicaciones. Del mismo modo, reconoció que del texto de la ley surge su aplicación inmediata a pleitos pendientes o interpuestos con posterioridad a la fecha de aprobación de la misma. En cuanto al planteamiento constitucional, el foro primario sostuvo que la Asamblea Legislativa ostentaba el poder inherente de aprobar legislación que limitara la jurisdicción del tribunal.

Inconformes, los demandantes presentaron un recurso de apelación ante el Tribunal de Apelaciones. El 19 de enero de 2007, el foro apelativo intermedio emitió una sentencia mediante la cual confirmó la desestimación del pleito. Fundamentado en nuestros precedentes, el Tribunal de Apelaciones concluyó que la Asamblea Legislativa tiene facultad para designar la exclusividad del foro para atender una reclamación. Sostuvo que en aquellos casos en que expresamente la ley confiere jurisdicción a un organismo administrativo sobre un asunto particular, los tribunales quedan privados de autoridad para dilucidar el

caso en primera instancia. Finalmente, el foro apelativo intermedio resolvió que la enmienda realizada mediante la Ley Núm. 138, *supra*, surgía como un ejercicio válido de la Asamblea Legislativa y que los demandantes no quedaban huérfanos de remedio. Ello, pues de éste proceder sería la Junta Reglamentadora de Telecomunicaciones el organismo que lo otorgaría en primera instancia.

Nuevamente inconformes, los demandantes presentaron un recurso de *certiorari* ante nos en el cual aducen que los foros *a quo* erraron al desestimar en virtud de la Ley Núm. 138, *supra*, la reclamación de las clases. Alegan que dicha ley no puede aplicarse de forma retroactiva y que la limitación a la compensación que en su día podría tener la clase es inconstitucional. Además, arguyen que la Ley Núm. 138, *supra*, violenta la separación de poderes; el debido proceso de ley; la libertad de asociación; la igual protección de las leyes; y menoscaba las obligaciones contractuales.

El 16 de marzo de 2007 emitimos una resolución en la cual expedimos el auto de *certiorari*. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

### A. Ley Núm. 138

Examinemos la Ley Núm. 138 de 4 de noviembre de 2005 y su trasfondo histórico. En el año 1996, la Asamblea Legislativa aprobó la Ley de Telecomunicaciones de Puerto Rico, *supra*, con miras a eliminar las barreras de competitividad en el campo de las telecomunicaciones y

abrir dicho mercado a la libre competencia. Caribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203, 216 (2002). Esta ley permite la imposición de multas y otras medidas correctivas a quienes incumplan sus disposiciones. Además, creó la Junta Reglamentadora de Telecomunicaciones y le confirió los poderes necesarios para reglamentar los servicios de telecomunicaciones, dar cumplimiento y administrar lo relativo a la referida ley.

La Junta Reglamentadora de Telecomunicaciones quedó así investida de varias facultades, entre las que figuran: (1) imponer multas administrativas por violaciones a su ley habilitadora, reglamentos y órdenes; (2) exigir cualquier clase de información que sea necesaria para el adecuado cumplimiento de sus facultades; (3) ordenar el cese de actividades o actos en violación de cualquier disposición de la Ley de Telecomunicaciones; (4) imponer y ordenar el pago de costas, gastos y honorarios por otros servicios profesionales y de consultoría incurridos en procedimientos adjudicativos ante la Junta; y (5) ordenar que se realice cualquier acto de conformidad con la Ley de Telecomunicaciones. Véase, 27 L.P.R.A. 267f(b).

Al aprobar la Ley de Telecomunicaciones el legislador tuvo la intención de conferirle amplios poderes a la Junta para corregir la conducta anticompetitiva de las compañías. P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 289 (2000). No obstante lo anterior, de conformidad con la Ley de Telecomunicaciones, la Junta Reglamentadora de Telecomunicaciones no tenía facultad para conceder daños y

perjuicios. Así lo resolvimos en <u>Caribe Comms., Inc. v.</u> <u>P.R.T.Co.</u>, *supra*, págs. 225-229.

Ante tal escenario, la Asamblea Legislativa aprobó la Ley Núm. 138, *supra*, para enmendar la Ley de Telecomunicaciones y otorgarle a la Junta Reglamentadora de Telecomunicaciones jurisdicción primaria exclusiva para determinar si existe alguna violación a la Ley de Telecomunicaciones y para estimar y conceder compensación por concepto de daños y perjuicios causados a los usuarios consumidores de servicios de telecomunicaciones y cable, como consecuencia de violaciones a la mencionada ley, de sus reglamentos y/o al contrato de servicio.[4]

En la Exposición de Motivos de la Ley Núm. 138, *supra*, la Asamblea Legislativa reconoció que a pesar de que la Ley de Telecomunicaciones concedió jurisdicción primaria exclusiva a la Junta sobre todo asunto relacionado a los servicios de telecomunicaciones, nuestro ordenamiento jurídico obligaba a presentar ante el Tribunal de Primera Instancia cualquier controversia relacionada a los servicios de telecomunicaciones y cable en la cual se causaran daños y perjuicios. El legislador advirtió que tal limitación a la jurisdicción de la Junta ponía en riesgo la estabilidad de la industria al crear dos foros, uno con y otro sin el peritaje necesario, que interpretan

---

[4]De conformidad con el artículo 2 de la Ley Núm. 138, *supra*, "daños y perjuicios" significa "exclusivamente los daños económicos sufridos por el consumidor que surgen directamente del incumplimiento de la [Ley de Telecomunicaciones], de los reglamentos aprobados por Junta y/o el contrato de servicio entre el consumidor y la compañía de telecomunicaciones o cable televisión".

simultáneamente esta legislación tan compleja. Véase, Exposición de Motivos de la Ley Núm. 138, *supra*. Por ello, la Asamblea Legislativa estimó necesario aclarar este asunto y disponer que la interpretación de la Ley de Telecomunicaciones debía recaer en primera instancia en la Junta Reglamentadora de Telecomunicaciones. Íd. Esto, por ser la Junta "un foro especializado con el conocimiento técnico necesario para atender cualquier reclamación relacionada a servicios de telecomunicaciones y cable". Íd.

De acuerdo con la Exposición de Motivos de la Ley Núm. 138, *supra*, la Asamblea Legislativa justipreció que otorgar autoridad a la Junta para estimar y conceder daños y perjuicios "promueve un mayor acceso de la ciudadanía al foro administrativo para reclamar compensación". Ahora bien, el legislador advirtió que existen casos de mayor complejidad que requieren el rigor y las garantías procesales del foro judicial. Íd. Por lo tanto, entendió necesario limitar la jurisdicción de la Junta de conceder daños y perjuicios hasta un máximo de $5,000. Al así hacerlo, explicó que "[c]ualquier reclamación sobre el máximo establecido será atendido en primera instancia por la Junta para determinar si hubo una violación a la Ley de Telecomunicaciones, la reglamentación de esta agencia y/o el contrato entre el consumidor y la compañía de telecomunicaciones y/o cable". Íd. Manifestó además que "[d]e la Junta resolver, luego de concluido el proceso adjudicativo, que hubo alguna violación, el consumidor podrá reclamar daños y perjuicios ante el Tribunal de

Primera Instancia que determinará si existen y la cuantía de los mismos". Íd. Hasta aquí el contenido de la Exposición de Motivos. Resta indagar las disposiciones específicas del estatuto.

El Artículo 1 de la Ley Núm. 138, *supra*, añadió un nuevo artículo 12-A al Capítulo III de la Ley de Telecomunicaciones. En lo pertinente, este artículo lee como sigue:

> Artículo 12-A. –Casos de Daños Presentados por los usuarios:
>
> **La Junta Reglamentadora de Telecomunicaciones tendrá jurisdicción primaria y exclusiva para adjudicar toda reclamación de daños y perjuicios** causados por cualquier persona natural o jurídica a un usuario, excepto reclamaciones de compañías de telecomunicaciones y cable entre sí, como consecuencia de la violación de las disposiciones de esta Ley, los reglamentos aprobados por la Junta y el contrato de servicio entre el usuario y la compañía de telecomunicaciones o cable, hasta la suma máxima de cinco mil (5,000) dólares por incidente. El término usuario comprenderá a las personas que reciben servicios de telecomunicaciones y cable que no sean compañías de telecomunicaciones y cable. **En estos casos, la Junta Reglamentadora de Telecomunicaciones tendrá jurisdicción primaria exclusiva.** En los casos de reclamaciones sobre el máximo establecido de compensación reclamada, la Junta tendrá jurisdicción primaria y exclusiva para determinar si existe una violación a esta Ley, a sus reglamentos y/o al contrato de servicio. Si luego de celebrada una vista en su fondo determina que existe una violación, emitirá Resolución y Orden describiendo la misma. Una vez advenga final y firme, el usuario podrá presentar demanda de daños y perjuicios ante el Tribunal de Primera Instancia acompañando copia certificada de la Resolución y Orden de la Junta. El Tribunal determinará si existen daños y perjuicios como resultado de dicha violación y concederá aquellos que se establezcan con prueba suficiente. En ambos casos, la Junta señalará por lo menos una vista de mediación para intentar lograr una solución rápida y justa a las reclamaciones de los usuarios. No obstante lo dispuesto en cualquier otra disposición de esta o

cualquier otra Ley, **la Junta tendrá jurisdicción primaria exclusiva para dilucidar cualquier pleito de clase presentado o que a partir de la vigencia de esta Ley se presenten por los usuarios por violaciones a las disposiciones de esta Ley y los reglamentos de la Junta, o reclamaciones relacionadas con servicios de telecomunicaciones y cable, siempre que no sean compañías de telecomunicaciones y cable entre sí.** La compensación total que podrá concederse en estos casos, nunca excederá la cantidad que sea menor entre cinco millones de dólares ($5,000,000) o el medio (1/2) por ciento de los activos del querellado según sus libros, la que sea menor. A los pleitos de clase aquí mencionados no le aplicarán las disposiciones de la Ley Núm. 118 de 25 de junio de 1971, según enmendada. La Junta aprobará reglamentación para la adjudicación de los casos de pleito de clase, la cual tendrá que estar acorde con los parámetros establecidos por la jurisprudencia a tales efectos. Artículo 1 de la Ley Núm. 138, *supra*. (Énfasis nuestro.)

En lo atinente a la causa ante nos, del texto antes citado surge que la Junta tendrá jurisdicción primaria y exclusiva para dilucidar cualquier pleito de clase presentado o que a partir de la vigencia de la Ley Núm. 138, *supra*, sea instado por violaciones a la Ley de Telecomunicaciones y sus reglamentos. Igualmente, la Ley Núm. 138, *supra*, establece un límite de compensación de $5,000 que la Junta puede conceder y dispone que cualquier pleito de clase que se presente ante la Junta tendrá un límite de compensación que nunca excederá la cantidad que sea menor entre $5,000,000 o el medio por ciento (1/2%) de los activos de la parte querellada.

Finalmente, el artículo 3 de la Ley Núm. 138, *supra*, establece que dicha ley "comenzará a regir inmediatamente después de su aprobación, y surtirá efecto sobre cualquier

procedimiento pendiente a esta fecha o que se radique con posterioridad a la misma".

## B. Retroactividad de las Leyes

El Artículo 3 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3, dispone que "[l]as leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario". Esta disposición tiene el efecto de una regla general de interpretación estatutaria, por lo que no constituye un principio rígido de aplicación absoluta. Vélez v. Srio. de Justicia, 115 D.P.R. 533, 542 (1984); Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 384-385 (1973).

Hemos resuelto que la intención del legislador de darle efecto retroactivo a una ley puede ser expresa o tácita. Torres Rodríguez v. Carrasquillo Nieves, 177 D.P.R. 728, 758 (2009); Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640, 648 (2007). Dicho de otra manera, la retroactividad, por ser un acto excepcional, "debe aparecer expresamente o surgir claramente del estatuto". Torres Rodríguez v. Carrasquillo Nieves, *supra*, pág. 758.

Si la nueva norma tiene el efecto de corregir o mejorar una anterior para conformarla más adecuadamente al estatuto que pretende enmendar, la retroactividad de la nueva norma no la hace nula de por sí. Véase, Licorería Trigo Inc. v. Srio. Hacienda, 94 D.P.R. 270, 281 (1967). Claro está, el efecto retroactivo por disposición expresa de la ley no podrá menoscabar obligaciones contractuales ni perjudicar derechos adquiridos al amparo de alguna legislación anterior. Domínguez Castro *et al*. v. E.L.A. I,

178 D.P.R. 1, 130 (2010); <u>Consejo de Titulares v. Williams Hospitality</u>, 168 D.P.R. 101, 108-109 (2006).

En concordancia con lo anterior, la regla de hermenéutica que impide que la legislación retroactiva afecte derechos adquiridos aplica solamente a disposiciones estatutarias de carácter sustantivo y no a aquellas de carácter procesal. Véanse: <u>Cortés Córdova v. Cortés Rosario</u>, 86 D.P.R. 117, 123 (1962); R.E. Bernier y J.A. Cuevas Segarra, <u>Aprobación e Interpretación de las Leyes en Puerto Rico</u>, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 400. Éstas tienen efecto retroactivo y deben aplicarse con preferencia, por cuanto suponen mayor protección de los derechos en litigio. J. Castán Tobeñas, <u>Derecho Civil Español, Común y Foral</u>, 12ma ed., Madrid, Ed. Reus, 1982, Tomo I, Vol. I, pág. 623, nota 1. Así, y por lo general, las disposiciones procesales tienen efecto retroactivo y aplican a casos pendientes, salvo que la Asamblea Legislativa disponga lo contrario. <u>Ortiz v. Fernós López</u>, 104 D.P.R. 851, 852 (1976); <u>Reyes v. Mayagüez Transport</u>, 86 D.P.R. 273, 280-281 (1962); R.E. Bernier y J.A. Cuevas Segarra, <u>op. cit.</u>, pág. 400.

De igual forma, los estatutos que versan sobre la jurisdicción son de interés público y no están comprendidos dentro de las disposiciones del Artículo 3 del Código Civil, *supra*, por lo que comienzan a regir retroactivamente. <u>J.R.T. v. A.E.E.</u>, 133 D.P.R. 1, 13 (1993). No obstante lo anterior, si el legislador no ha tenido la intención de aplicar retroactivamente una ley

procesal o si resulta prácticamente imposible así aplicarla, tal legislación tendrá efectos prospectivos. Véase, Manson v. White Star Bus Line, 53 D.P.R. 337, 340-344 (1938). Claro está, la aplicación en el tiempo de cualquier ley dependerá de la validez de la propia ley.

### C. Separación de Poderes y Validez de Legislación con Efectos en Pleitos Pendientes

El principio de separación de poderes en Puerto Rico se encuentra expresamente consagrado en la Sección 2 del Artículo 1 de la Constitución de Puerto Rico, L.P.R.A., Tomo I. Este principio persigue salvaguardar la independencia de cada rama del gobierno y proteger la libertad de los individuos frente a una peligrosa acumulación de poder en una sola rama de gobierno. Véanse: Colón Cortés v. Pesquera, 150 D.P.R. 724, 750 (2000); Union Pac. R. Co. v. U.S., 99 U.S. 700 (1878). Mediante su empleo se delimitan "los contornos de los poderes públicos para evitar la concentración indebida de poderes y promover el más eficiente funcionamiento del sistema". Nogueras v. Hernández Colón, 127 D.P.R. 405, 426-427 (1991). En varias ocasiones, incluso antes de la aprobación de la Constitución de Puerto Rico, hemos considerado si el poder legislativo interfiere indebidamente con la función judicial al aprobar legislación que tenga repercusiones en un pleito pendiente.

En Suárez v. Tugwell, 67 D.P.R. 180 (1947), mientras se tramitaba un pleito en los tribunales en el que ya se había concedido un interdicto preliminar, la Asamblea

Legislativa aprobó la Ley Núm. 2 de 25 de febrero de 1946, "la cual prohibió la acción del contribuyente y privó a los tribunales de Puerto Rico de 'jurisdicción para conocer, o continuar conociendo si se hubiera ya iniciado', cualquier acción sobre la constitucionalidad de una ley, resolución o actuación ejecutiva autorizada por ley, cuando el demandante base su legitimación únicamente en su carácter de contribuyente". Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 97 (1998).

Los demandantes argumentaron ante nos que la Ley Núm. 2, *supra*, era nula y que no podía aplicarse al caso que se encontraba en trámite cuando se aprobó la ley. Suárez v. Tugwell, *supra*, pág. 183. Resolvimos en aquella ocasión que la ley en cuestión era válida y que podía aplicarse al pleito pendiente. Expresamos que la Asamblea Legislativa tiene el poder para limitar la jurisdicción de los tribunales para expedir interdictos en una clase específica de controversias y que una legislación restrictiva, a tales efectos, es válida aun al aplicarse a casos pendientes. Íd., pág. 184. Ciertamente, de lo que trataba la legislación era de prohibir la concesión del remedio de interdicto. Como resultado, confirmamos la sentencia emitida por el entonces tribunal de distrito, la cual dejó sin efecto el interdicto preliminar y archivó el caso debido a la aprobación y vigencia de la ley allí en controversia.

Posteriormente, en Sunland Biscuit Co. v. Junta Salario Mínimo, 68 D.P.R. 371 (1948), mientras se

encontraba pendiente un caso ante nuestra consideración, la Asamblea Legislativa aprobó la Ley Núm. 451 de 14 de mayo de 1947 la cual tuvo el efecto de convalidar el decreto mandatorio impugnado. El 25 de junio de 1947 emitimos una sentencia en la que anulamos el aludido decreto. Sin embargo, en reconsideración determinamos que la Ley Núm. 451, *supra*, la cual entró en vigor el 1 de julio de 1947, de manera clara y terminante había convalidado y ratificado el decreto mandatorio en pugna. Expresamos que la Asamblea Legislativa tiene facultad para aprobar estatutos reparativos de esta naturaleza, Sunland Biscuit Co. v. Junta Salario Mínimo, *supra*, págs. 378-379, y reconocimos que nuestra sentencia aún no había creado estado de derecho alguno a favor de la recurrente.

Además de lo anterior, sostuvimos que la Ley Núm. 451, *supra*, "específicamente hac[ía] referencia a decretos emitidos con anterioridad a la aprobación de [dicha ley] y ésta lo fu[e] en 14 de mayo de 1947, que es fecha anterior a aquélla en que se dictó la sentencia de este Tribunal. Bajo estas condiciones el estatuto curativo resultó completamente válido y constitucional".[5] Sunland Biscuit Co. v. Junta Salario Mínimo, *supra*, pág. 379.

---

[5]Nótese que la ley impugnada se promulgó para enmendar sustancialmente la Ley Núm. 8 de 5 de abril de 1941, y la disposición que convalidó las actuaciones previas de la Junta de Salario Mínimo se estableció para darle continuidad de forma general a todos los actos realizados por los funcionarios de dicha Junta y no exclusivamente al decreto impugnado. Véase, Misión Ind. P.R. v. J.P., *supra*, págs. 98-99.

En Misión Ind. P.R. v. J.P., 146 D.P.R. 64 (1998), el entonces Tribunal de Circuito de Apelaciones emitió una sentencia en la que revocó una resolución de la Junta de Planificación que aprobó una consulta de ubicación para el Superacueducto de la Costa Norte. Asimismo, ordenó la paralización total de las obras iniciadas hasta que se cumpliera con la legislación y reglamentación aplicables. Poco tiempo después, la Asamblea Legislativa aprobó y el Gobernador firmó la Ley Núm. 19 de 12 de junio de 1997, 22 L.P.R.A. sec. 451 *et seq.*, para ordenarle a la Autoridad de Acueductos y Alcantarillados continuar con la construcción del referido proyecto, eximirle de cumplir con la Ley de Procedimiento Administrativo Uniforme y establecer nuevos procedimientos y requisitos para la autorización del proyecto y para la revisión judicial.

En aquel entonces, este Tribunal resolvió que la Ley Núm. 19, *supra*, era inconstitucional por violar el principio de separación de poderes al interferir de forma no permisible con el ejercicio del Poder Judicial. Expresamos que la Asamblea Legislativa puede, en el ejercicio de su poder inherente, afectar litigios pendientes sin contravenir el principio de la separación de poderes, siempre que lo haga en el marco de la enunciación de una nueva norma de derecho y no meramente de la adjudicación de una controversia específica. Misión Ind. P.R. v. J.P., *supra*, págs. 110-112. Esta Curia estimó que dicha ley perseguía adjudicar la validez de los permisos de ubicación, pues pretendía dictar el resultado del caso que

se encontraba ante la consideración de este Tribunal. Igualmente, expresamos lo siguiente:

> El poder de revisar una sentencia le corresponde a la Rama Judicial. Es una facultad que integra la entraña misma del poder que la Sec. 1 del Art. V de la Constitución, *supra*, les asigna exclusivamente a los tribunales. No es una facultad compartida con el Poder Legislativo, ni trasladable a éste por razón alguna. Si bien es cierto que el principio de la separación de poderes debe ser aplicado flexiblemente, esa flexibilidad "no significa que lo que es la esencia de la función judicial pueda ser destruido, convirtiendo el poder para decidir en una débil oportunidad para consultar y recomendar". <u>Misión Ind. P.R. v. J.P.</u>, *supra*, pág. 112. (Cita omitida.)

En <u>Colón Cortés v. Pesquera</u>, 150 D.P.R. 724 (2000), varias comunidades acudieron ante nos mediante recurso de *certiorari* para cuestionar la determinación del entonces Tribunal de Circuito de Apelaciones de que el recurso de *mandamus* presentado por ellas era improcedente. Argumentaron que la Autoridad de Carreteras y Transportación, en adelante "ACT", incumplió con emitir una válida Declaración de Impacto Ambiental final, en lo sucesivo "DIA", para la totalidad del proyecto vial conocido como Ruta 66. Además, señalaron que la ACT ignoró los requerimientos del panel examinador de la Junta de Calidad Ambiental y los señalamientos que específicamente hiciéramos en el caso de <u>Colón Cortés v. J.C.A.</u>, 148 D.P.R. 434 (1999). En <u>Colón Cortés v. Pesquera</u>, *supra*, emitimos una resolución paralizando las obras de construcción. Mientras se encontraba pendiente para nuestra consideración la petición de *certiorari*, la Asamblea Legislativa aprobó dos (2) leyes –Ley Núm. 323 de 6 de noviembre de 1999 y Ley

Núm. 324 de 6 de noviembre de 1999- con el propósito de modificar el derecho sobre los procedimientos para obtener una DIA y permitir el fraccionamiento de proyectos. La ACT presentó una moción de desestimación en la que alegó que de conformidad a las aludidas leyes este Tribunal carecía de jurisdicción para considerar el recurso.

En aquel entonces, este Tribunal resolvió que el objetivo de la legislación en cuestión consistía en obviar "los parámetros dispuestos en una Opinión anterior de este Tribunal". Colón Cortés v. Pesquera, *supra*, pág. 749. Expresamos que "[l]o importante al determinar si cierta actuación legislativa infringe el principio de separación de poderes, es si la intención clara y específica de la ley fue afectar el resultado de un pleito particular". Íd., pág. 764. Resolvimos que la sección 1 de la Ley Núm. 324, *supra*, única de las enmiendas aplicable a la controversia ante nuestra consideración, resultaba inconstitucional en su aplicación por contravenir el principio de separación de poderes. De igual forma, esta Curia concluyó que la Asamblea Legislativa perseguía "revocar la determinación de este Tribunal en Colón Cortés I, *supra*, sobre las deficiencias de la DIA-P y el suplemento preparados por la ACT". Íd., pág. 765. Concluimos que "[l]a consecuencia de la legislación ante nuestra consideración [era] liberar a la ACT de los deberes ministeriales que, según determinamos en Colón Cortés I, *supra*, todavía no había cumplido". Íd., pág. 764. Además, manifestamos lo siguiente:

> Este Tribunal, como custodio e intérprete final de nuestra Constitución, la va a proteger y no va a permitir que acciones como la que hoy nos ocupa opaquen o disminuyan su valor, avalando que la parte que resulte o pudiera resultar perdidosa en un proceso judicial procure legislación de encargo que le permita continuar con una acción declarada ilegal por la Rama Judicial. Es decir, no podemos consentir que la Legislatura, con el aval del Gobernador, se convierta en un Tribunal Supremo de facto, revocando acciones tomadas por este Foro. Íd., pág. 764.

Tanto Misión Ind. P.R. v. J.P., *supra*, como Colón Cortés v. Pesquera, *supra*, son vívidos ejemplos de que cualquier intento de la Asamblea Legislativa por dejar sin efecto una orden judicial en un caso pendiente ante nuestra consideración será considerado inconstitucional por violentar el principio de separación de poderes. Ciertamente, ninguna Asamblea Legislativa "tiene la facultad para intervenir con el ejercicio de la función judicial, por lo que no puede dejar sin efecto, modificar, o menoscabar una sentencia final emitida por un tribunal que tenga jurisdicción para dictarla". Mun. De San Juan v. J.C.A., 152 D.P.R. 673, 726 (2000); P.R. Tobacco Corp. v. Buscaglia, Tes., 62 D.P.R. 811, 822 (1944).

### D. Jurisdicción Primaria y Exclusiva

Los foros judiciales de Puerto Rico son de jurisdicción general y tienen autoridad para entender en cualquier causa de acción que presente una controversia para adjudicación. Mun. Arecibo v. Mun. Quebradillas, 161 D.P.R. 109, 114 (2004); Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223, 230 (1994). Empero, los tribunales pueden ser privados de su autoridad para

entender en algún asunto particular si así lo dispone expresamente algún estatuto o si ello surge del mismo por necesaria implicación. Íd.; Rosado v. Registrador, 71 D.P.R. 553, 556 (1950). En específico, "[c]uando existe un estatuto que expresamente le confiere la jurisdicción a un órgano administrativo sobre determinado tipo de asuntos, los tribunales quedan privados de toda autoridad para dilucidar el caso en primera instancia". Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257, 268 (1996). Del mismo modo, hemos expresado que "la designación de un foro administrativo con jurisdicción exclusiva es perfectamente compatible con la revisión judicial de la cual puede ser objeto posteriormente la decisión del organismo". Íd.

III

Debido a los múltiples planteamientos presentados atenderemos por partes la discusión de la presente causa. Consideremos en primer lugar el asunto jurisdiccional.

Las clases alegan que no procede la desestimación de su reclamación debido a que la Ley Núm. 138, *supra*, la cual dispone que será la Junta Reglamentadora de Telecomunicaciones quien tendrá jurisdicción primaria y exclusiva para atender todo pleito relacionado a la Ley de Telecomunicaciones, y no el Tribunal de Primera Instancia, transgrede el principio de separación de poderes por afectar retroactivamente un pleito pendiente y usurpar el poder de los tribunales para conceder daños. En fin, cuestionan que el foro primario haya desestimado su

reclamación para que ésta fuera presentada ante la Junta Reglamentadora de Telecomunicaciones. Veamos.

Uno de los propósitos de la Asamblea Legislativa al aprobar la Ley Núm. 138, *supra*, consistió en concederle jurisdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones para determinar si existe una violación a la ley que a bien tiene administrar y, a su vez, estimar y conceder compensaciones por daños y perjuicios causados por violaciones a la Ley de Telecomunicaciones. De esta forma el legislador entendió que mejor se adelantaba su intención de promover un mayor acceso de la ciudadanía al foro administrativo para reclamar tales daños y, al mismo tiempo, salvaguardar la estabilidad de la industria al disponer que en vez de dos foros que interpretaran simultáneamente la misma ley, el referido cometido recaería en primera instancia en la Junta Reglamentadora de Telecomunicaciones. Ello, debido a su conocimiento técnico y especializado.

De entrada, no cabe discusión respecto al poder de la Asamblea Legislativa para otorgar jurisdicción primaria y exclusiva a un organismo administrativo. Rivera Ortiz v. Mun. de Guaynabo, *supra*. Tampoco sobre la potestad de la Asamblea Legislativa para aprobar una ley y concederle expresamente efectos retroactivos, siempre que no afecte derechos adquiridos, menoscabe obligaciones contractuales o viole el principio de separación de poderes.

Recuérdese que la Asamblea Legislativa puede, en el ejercicio de su poder inherente, afectar litigios

pendientes sin transgredir el principio de separación de poderes, siempre que lo haga en el marco de la enunciación de una nueva norma de derecho y no meramente de la adjudicación de una controversia específica. Misión Ind. P.R. v. J.P., *supra*. Ciertamente, esta norma puede ser de intrincada aplicación. Por varias razones. Primero, el derecho se modifica por alguna razón y en pocas ocasiones el legislador actúa con entera abstracción de la realidad forense. Segundo, en esas ocasiones, el legislador puede enunciar una nueva norma de derecho sin "la intención clara y específica" de adjudicar o afectar un pleito pendiente, Colón Cortés v. Pesquera, *supra*, pág. 764, pero tal puede ser el resultado una vez se aplique la ley al caso. En tales casos, descifrar cuál es la intención legislativa "es a lo sumo una conjetura judicial", por lo que debemos realizar un laborioso esfuerzo por determinar esa intención mediante la más correcta conjetura posible. Tugwell, Gobernador v. Corte, 64 D.P.R. 220, 228 (1944).

Es por estas razones que en atención a la norma en cuestión debemos también preguntarnos si la ley, o la disposición específica de la misma, afecta de forma impermisible el resultado del pleito en trámite. Dicha interrogante debemos atenderla a la luz de la realidad de que la disposición aquí discutida de la Ley Núm. 138, *supra*, fue aprobada en una etapa procesal distinta a las leyes analizadas en los casos de Misión Ind. P.R. v. J.P., *supra*, y Colón Cortés v. Pesquera, *supra*.

Procede concentrarnos en esta ocasión en precisar que la acción legislativa afectará de forma impermisible un pleito cuando pretenda hacer determinaciones de hechos o dictar conclusiones de derecho sobre un caso en trámite en los tribunales. Véase: Robertson v. Seattle Audubon Soc., 503 U.S. 429, 441 (1992).

En el caso ante nuestra consideración, luego de que la P.R.T.C. interpusiera una moción de sentencia sumaria en el Tribunal de Primera Instancia, la Asamblea Legislativa aprobó la Ley Núm. 138, *supra*, y le otorgó expresamente efectos retroactivos. La disposición de la ley aquí discutida delegó jurisdicción primaria y exclusiva en la Junta Reglamentadora de Telecomunicaciones para determinar en todo caso si existe alguna violación a la Ley de Telecomunicaciones y conceder daños y perjuicios. Ello, con las particularidades antes expresadas.

La consecuencia de esta disposición de la Ley Núm. 138, *supra*, es que el foro para reclamar en primera instancia fue transferido a una agencia administrativa. El asunto es tan claro que las propias clases admiten que la "Ley 138 en que se basó la sentencia no tuvo el efecto de privar a los demandantes de su derecho a reclamar sino, más bien, a dirigir la reclamación a un foro distinto". Véase, Moción de Reconsideración presentada por los demandantes ante el Tribunal de Primera Instancia, Apéndice, pág. 2251.

En este caso, no hay sentencia que haya declarado ilegal el cargo de tele-tecla ni creado estado de derecho alguno a favor de las clases, Sunland Biscuit Co. v. Junta

de Salario Mínimo, *supra*, o que pueda ser revocada por la disposición en controversia de la Ley Núm. 138, *supra*. Tal disposición de manera alguna adjudica la reclamación de las clases, Misión Ind. P.R. v. J.P., *supra*, ni pretende hacer determinaciones de hechos o dictar conclusiones de derecho. Tampoco dicta el resultado del caso pendiente. Colón Cortés v. Pesquera, *supra*. Y mucho menos usurpa la facultad del Poder Judicial para estructurar remedios adecuados, pues se trata de una disposición que meramente regula la autoridad para entender en primera instancia un asunto particular sin prejuzgar los méritos de la causa. Colón Cortés v. Pesquera, *supra*. Ante las circunstancias particulares del presente caso, forzoso es concluir que la disposición en cuestión no afecta de forma impermisible el pleito pendiente.

Nótese además que la nueva norma tuvo el efecto de aclarar y corregir la anterior para conformarla más adecuadamente a la Ley de Telecomunicaciones, pues ésta, a pesar de haberle concedido jurisdicción primaria a la Junta sobre todo asunto relacionado a la Ley de Telecomunicaciones, no le confirió autoridad para conceder compensación por daños y perjuicios.[6] La Ley Núm. 138,

---

[6]Eso resolvimos en Caribe Comms., Inc. v. P.R.T.Co., *supra*, págs. 225-229. Pero allí también expresamos que una agencia administrativa puede tener autoridad para conceder daños y perjuicios si: (1) la ley expresamente le confiere tal facultad; (2) el poder está consignado implícitamente en su amplia facultad para conceder remedios; o (3) cuando está relacionado con el servicio que presta la agencia y se ejerce para adelantar los propósitos de su ley habilitadora. Íd., págs. 215-216. Véanse, además, U.T.I.E.R. v. J.R.T., 99 D.P.R. 512 (1970); Quiñones

*supra*, remedió el asunto. Ahora verdaderamente puede afirmarse que la Junta Reglamentadora de Telecomunicaciones posee jurisdicción sobre todo asunto relacionado a su ley orgánica.

Del mismo modo, al examinar la disposición en cuestión notamos que el legislador atendió cuidadosamente nuestros pronunciamientos en Caribe Comms., Inc. v. P.R.T.Co., *supra*. Allí mostramos preocupación por la concesión de autoridad a la Junta para otorgar daños en reclamaciones que pudieran alcanzar cantidades económicas millonarias y abarcaran derechos propietarios. Esto, pues en esos casos "debe ser el foro judicial el llamado a garantizar el debido proceso de ley a través de todos los mecanismos y protecciones que caracterizan el procedimiento judicial". Íd., pág. 227. A saber: "un descubrimiento de prueba plenario, el uso de las reglas de evidencia, el juicio por un juez imparcial a través del criterio de la preponderancia de la evidencia en los casos civiles". Íd. Ahora, a diferencia de Caribe Comms., Inc. v. P.R.T.Co., *supra*, el legislador ha empleado "un lenguaje determinante, en torno a la delegación del poder adjudicativo en materia de daños" y limitó la jurisdicción de la Junta de manera cónsona con nuestras expresiones. Íd., pág. 228.

El tribunal siempre podrá ejercer su función judicial en este tipo de casos. Ello, pues la Junta atenderá inicialmente todo reclamo relacionado a la Ley de

_____

Irizarry v. San Rafael Estates, S.E., 143 D.P.R. 756 (1997).

Telecomunicaciones y, de resolver que en efecto se cometió alguna violación, concederá la compensación que proceda en concepto de daños y perjuicios hasta un máximo de $5,000. En los casos en que el remedio exceda esta cantidad, el consumidor o los consumidores podrán reclamar daños y perjuicios en el Tribunal de Primera Instancia. Además, el foro judicial también estará disponible para revisar una determinación adversa por la Junta. De esta forma, y en cuanto a este asunto, el legislador empleó suficientes salvaguardas para garantizar el debido proceso de ley.

De conformidad con lo anterior, concluimos que la disposición de la Ley Núm. 138, *supra*, que concede jurisdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones, puede aplicarse retroactivamente a pleitos pendientes por ser esa la intención expresa de la Asamblea Legislativa y, particularmente, por no infringir el principio de separación de poderes. Ahora bien, en aras de evitar que esta disposición de la Ley Núm. 138, *supra*, aborte la continuación de la reclamación de las clases de consumidores, referimos el caso y su expediente a la Junta Reglamentadora de Telecomunicaciones. Una determinación en contrario menoscabaría las salvaguardas que precisamente enmarcan la adopción del principio de separación de poderes.

IV

Las clases alegan además que el límite establecido por la Ley Núm. 138, *supra*, a la compensación que en su día podrían tener es inconstitucional. En sintonía con lo

anterior, aducen que la Ley Núm. 138, *supra*, menoscaba obligaciones contractuales, transgrede la libertad de asociación; el debido proceso de ley; y la igual protección de las leyes. Por su parte, la P.R.T.C. sostiene que estos asuntos no alcanzan la madurez necesaria para un pronunciamiento judicial.

Para atender apropiadamente estos señalamientos es necesario tener presente que el requisito de madurez para atender una controversia de índole constitucional forma parte de las doctrinas de autolimitación judicial.[7] Rexach v. Ramírez Vélez, 162 D.P.R. 130, 141 (2004). La prudencia y la no deseabilidad de opiniones consultivas fundamentan el requisito de madurez.[8] Íd.; Raúl Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, op. cit., pág. 195.

En la doctrina de madurez "se examina la proximidad temporal o inminencia del daño alegado a través de un análisis dual: si la controversia sustantiva es apropiada para resolución judicial y si el daño es suficiente para requerir adjudicación". Crespo Claudio v. O.E.G., 173 D.P.R. 804, 814 (2008). Con ánimo no desprevenido "[l]os

---

[7]Desde E.L.A. v. Aguayo, 80 D.P.R. 554, 596 (1958), hemos sostenido que como parte de la doctrina de autolimitación judicial no nos anticiparemos a decidir planteamiento constitucional alguno antes de que sea necesario así hacerlo.

[8]Sabido es que la doctrina de opinión consultiva intenta evitar que se produzcan decisiones en el abstracto o bajo hipótesis de índole especulativa. Esto, pues no es función de los tribunales actuar como asesores o consejeros. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 721 (1980).

tribunales deben determinar si existe realmente una controversia entre las partes de naturaleza justiciable, propia para un pronunciamiento judicial". Rexach v. Ramírez Vélez, *supra*, pág. 142; Asoc. Guardias Penales v. Srio. de Justicia, 87 D.P.R. 711, 713 (1963). Resulta determinante, pues, que la controversia se encuentre concretamente definida, de forma que el tribunal pueda justipreciarla en sus méritos. Rexach v. Ramírez Vélez, *supra*, pág. 142.

En el caso ante nos, el ataque a la validez de la disposición de la Ley Núm. 138, *supra*, que establece un límite a la compensación total que en su día podría concederse a las clases, depende de que en el futuro se pruebe que el cargo de tele-tecla fue cobrado ilegalmente. También depende de que se fije una cantidad de compensación que sobrepase el tope dispuesto por la Ley Núm. 138, *supra*. Ninguna de las dos cosas ha ocurrido. Y ningún foro ha declarado la ilegalidad del cargo o ha impuesto compensación alguna que supere el tope impugnado para los pleitos de clase.

Del mismo modo, aún no se ha atendido la alegación de la P.R.T.C. a los efectos de que las reclamaciones de las clases se encuentran prescritas o caducas. La P.R.T.C. aduce que cobró el cargo de tele-tecla hasta diciembre de 2003 y que en cumplimiento con la Ley Núm. 33 de 27 de junio de 1988 y la Ley de Telecomunicaciones, todas las facturas remitidas a los abonados advertían de la existencia de un plazo de quince (15) días para pagar u objetar los importes en ellas fijados, mediante ciertos

trámites reglamentarios. Pero, según arguye, los miembros de las clases no formularon objeciones, querellas o reclamaciones dentro del plazo fijado, ni acudieron a foro alguno para impugnar la legalidad del cargo. Al día de hoy, tal asunto también se encuentra irresoluto.

Por estas razones, y las circunstancias antes intimadas, el ataque constitucional está saturado de contingencias. Supone, pues, unos eventos indefinidos que se proyectan prospectivamente. Pero varias adjudicaciones faltan por concretarse. En el espacio temporal del orden de las cosas el reclamo es prematuro. Es por ello que la intervención judicial en este momento implicaría inmiscuirnos inapropiadamente con una acción administrativa ulterior. Ante tal escenario fáctico, la controversia no se encuentra concretamente definida de manera que sea apropiada para adjudicación judicial.

Será la Junta Reglamentadora de Telecomunicaciones quien determine si la reclamación de las clases no está prescrita y si el cargo de tele-tecla fue facturado ilegalmente. En su momento, y de ser necesario, no dudaremos en expresarnos de las clases prevalecer y de madurar el reclamo sobre el tope de compensación en pleitos de clase.

Por todo lo cual, concluimos que el cuestionamiento al límite establecido por la Ley Núm. 138, *supra*, a la compensación que en su día podrían tener las clases no está maduro. Cónsono con lo anterior, y por su relación inextricable con ello, también carecen de madurez los

planteamientos sobre violación a la libertad de asociación; al debido proceso de ley; la igual protección de las leyes; y sobre el menoscabo de las obligaciones contractuales.

En cuanto al único asunto maduro, resolvemos que la disposición de la Ley Núm. 138, *supra*, que concede jurisdicción primaria y exclusiva a la Junta Reglamentadora de Telecomunicaciones no infringe la doctrina de separación de poderes y puede aplicarse de manera retroactiva a pleitos pendientes. Por ello, los foros *a quo* actuaron correctamente al desestimar la reclamación de las clases.

V

Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Apelaciones y se remite el caso a la Junta Reglamentadora de Telecomunicaciones.

Se dictará sentencia de conformidad.


                                        Luis F. Estrella Martínez
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Fernando Márquez; Dora E. García;      *
Josefina O. Capone; Howard Ferrer;     *
Edwin Díaz, Rafael Rodríguez,          *
por sí y en Representación de la        *
Clase con Una Estación Principal        *
Residencial.                            *
(Clase A);                              *
                                        *
Health Care Partners, Inc.;            *
Raúl Delguy Capilla; Santa Paula        *        CC-2007-101
Oil Corp.; Best Gas; Howard             *
Ferrer; B/JCS Deli Box; Edwin           *
Díaz, Insuramerica Agency;              *
Interservice Group; Interamerican       *
Business Consultant; Instituto          *
Neumológico, por sí y en                *
Representación de la Clase con          *
Una Estación Principal de Negocios     *
(Clase B);                              *
                                        *        Certiorari
Interservice Group, Inc.;              *
Interamerican Business Consultant;     *
Instituto Neumológico, por sí y en      *
Representación de la Clase con          *
Una Línea Principal de Negocios        *
(Clase C);                              *
                                        *
         Peticionarios                  *
                                        *
            v.                          *
                                        *
Puerto Rico Telephone Company          *
                                        *
         Recurrido                      *
**********************************


SENTENCIA


San Juan, Puerto Rico, a 8 de diciembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la sentencia emitida por el Tribunal de Apelaciones y se remite el caso a la Junta Reglamentadora de Telecomunicaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor

Hernández Denton no interviene. El Juez Asociado señor Martínez Torres está inhibido.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo